IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS BAILEY,

   Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,

   Defendant.

Civil Action No.: PX-19-2926

**MEMORANDUM OPINION**

Plaintiff Thomas Bailey, a state inmate, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendant Wexford Health Sources, Inc. ("Wexford"). ECF No. 1. Bailey avers that he was denied appropriate post-operative care after surgery to his right shoulder. *Id*. Pending are Bailey's motions to compel and to appoint counsel (ECF Nos. 14, 18 and 20) and Wexford's motion to dismiss the Complaint, or alternatively for summary judgment to be granted in its favor. ECF No. 16. Bailey opposes Wexford's motion. ECF No. 25. The Court concludes a hearing is not necessary. *See* L.R. 105.6 (D. Md. 2018). For the following reasons, Bailey's motions are denied and Wexford's motion, construed as one for summary judgment, is granted.

**I.   Background**

On August 18, 2017 Bailey, an inmate confined at Western Correctional Institution ("WCI"), underwent shoulder surgery at the Western General Maryland Hospital. ECF No. 1 at 2; ECF No. 16-4 at 8. The same day, he was discharged to the WCI infirmary. ECF No. 1 at 2; ECF No. 16-4 at 8. Discharge instructions noted that Bailey should receive "ice, NSAIDS," a "sling" and to "start PT/OT at prison." ECF No. 1 at 3; ECF No. 16-4 at 7. Although Bailey was

not given NSAIDS upon his return, he had been prescribed other painkillers used to treat moderate to severe pain. ECF Nos. 16-4, 16-5 at 2, ¶ 6.

Bailey maintains that when he returned to his housing unit the next day, he requested ice for his wound, but was told none could be provided without approval from the medical unit. ECF No. 1 at 3. Bailey similarly requested ice and NSAID from the nurse who made rounds to the unit. *Id.* Bailey was told to put in a sick call request, which he did that evening and two days thereafter. *Id*.

Because of the pain from his shoulder surgery, Bailey had to sleep sitting up, which caused his back to hurt so severely he could not stand or walk without assistance. ECF No. 1 at 4. Bailey complained of his back pain and not receiving "pain meds." ECF No. 16-4 at 18. On August 23, Bailey was examined by medical personnel and was prescribed Tylenol extra strength, Tramadol, Baclofen, and a muscle rub. ECF No. 16-4 at 19, 23; ECF No 16-5 ¶¶ 7, 9. Bailey was advised to continue submitting sick call requests which he did on August 24, 26, and 29. *Id*. Medical records reflect that on August 29, Bailey refused to attend a medical appointment, but Bailey denies that he ever refused a sick call visit.

On September 7, 2017, Dr. Mahboob Ashraf examined Bailey. ECF No. 16-4 at 24. Dr. Ashraf noted that Bailey had been taking Tramadol and wished to have the dose increased. *Id.* Instead, Dr. Ashraf prescribed Toradol injections to address swelling and pain as well as "ice packs for pain relief." *Id. See also* ECF No. 1 at 5. Bailey maintains that never received ice as prescribed and was only given one out of the six Toradol injections. *Id*.

Dr. Ashraf saw Bailey again on October 11, 2017, for a scheduled provider visit. ECF No. 16-4 at 35. At that time, Dr. Ashraf noted that Bailey was receiving Tramadol and Amitriptyline, but that he still had muscular rigidity as well as stiffness in his right shoulder joint following his

surgery. *Id*. Dr. Ashraf ordered additional Baclofen and Toradol prescriptions. *Id*. Again, Bailey maintains that he received only one Toradol injection after the first time it was prescribed. ECF No. 25 at 6.[1]

Bailey continued to complain of right shoulder pain through October of 2018. ECF No. 16-4 at 46, 53-54, 56-57, 68-69, 73-78. In January of 2018, Bailey told Dr. Ashraf that his left shoulder had also begun to hurt. *Id*. at 53-54. An x-ray of his left shoulder was unremarkable. *Id*. at 56.

### A. Bailey's Motions

Bailey first moves to compel discovery. ECF No. 18. Bailey had propounded written discovery on Wexford. However, a party is not required to engage in formal discovery until after the Court issues a scheduling order. *See* Local Rule 104.4 (D. Md. 2018). The Court has not issued a scheduling order. Accordingly, Bailey is not yet entitled to a formal discovery response, and so his motion to compel is denied.

Bailey also moves for appointment of counsel. ECF Nos. 14 and 20. Bailey contends that he cannot afford counsel, the issues in his case are complex, and he has limited access to the law library. ECF No. 14 at 1; ECF No. 20 at 1. This Court's power to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1) is discretionary and may be exercised where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of

---

[1] Bailey's Tramadol prescription expired in November 2017. Because Tramadol is a habit-forming synthetic opioid, the prescription was not renewed. ECF No. 16-5 at 3-4.

counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

The Court has reviewed carefully Bailey's pleadings and finds that he is capable of articulating the legal and factual bases of his claims himself or securing meaningful assistance in doing so. Additionally, as discussed below, the Court grants Wexford's summary judgment motion which extinguishes the claim against Wexford. Thus, the Court declines to appoint pro bono counsel.

B. **Wexford's Motion**

Wexford moves to dismiss the Complaint or, in the alternative, for summary judgment to be granted in its favor. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Wexford's motion placed Bailey on notice that the Court may treat it as one for summary judgment. ECF No. 16. *See Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Additionally, Bailey's response includes record evidence outside the four corners of the

4

Complaint. ECF No. 25. Bailey also requests additional discovery to ascertain the identifies of the individual medical providers who he claims denied him NSAIDs and ice. Putting to one side that the medical records attached to Wexford's motion already reflect the identities of the medical providers, additional discovery on this point is unnecessary. This is because even if discovery would clarify exactly *who* among Wexford employees had purportedly denied Bailey ice and NSAIDs, the claim itself fails on its merits because no reasonable trier of fact could conclude that he had been denied constitutionally adequate medical care. Thus, the Court finds no need for additional discovery that Bailey seeks, and will treat Wexford's motion one for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest

5

upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

Wexford, as the only named defendant, contends that summary judgment should be granted in its favor because supervisory liability for denial medical care cannot attach as a matter of law. It is well established that the doctrine of respondeat superior does not apply to claims asserting constitutional deprivations brought pursuant to 42 U.S.C. § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). In this respect, a private corporation that steps into the shoes of a state actor cannot be held liable for a §1983 claim solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 Fed. Appx. 279, 282 (4th Cir. 2009). Rather, liability to the entity itself attaches only when the constitutional deprivation resulted from the entity having implemented an unconstitutional policy, custom or practice. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Accordingly, to survive challenge, Bailey must point to some evidence that he was denied ice and NSAIDs pursuant to a policy, custom or practice, and that denial proximately caused the alleged constitutional violation. *Monell*, 436 U.S. at 690; *see also Jordan ex rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

No such evidence exists to support the claim. Indeed, Bailey has not pursued this liability theory at all. Thus, summary judgment against Wexford is granted on this basis alone.

However, even if Bailey had identified the individual actors who had refused him ice and NSAIDs, that refusal alone does not amount to provision of constitutionally inadequate medical

care in violation of the Eighth Amendment.  State actors are prohibited from engaging in "unnecessary or wanton" infliction of pain by denying sufficient medical care. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To maintain a claim for constitutional denial of medical care, a plaintiff must demonstrate that a defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).  To demonstrate that a state actor denied an inmate medical care with deliberate indifference, the prisoner must show that objectively he was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need for medical attention, failed to provide such care or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  "A medical condition is shown as objectively serious when it would result in further significant injury or unnecessary and wanton infliction of pain if not treated."  *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018) (citing *Gayton v. McKoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Additionally, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the plaintiff demonstrates a defendant's deliberate indifference, an official may nonetheless still avoid liability "if [he] responded reasonably to the risk, even if the harm was not

ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

Bailey contends that the failure of medical personnel to give him NSAIDs and ice after the initial 24-hour period following his surgery amounted to an Eighth Amendment denial of medical care. The Court cannot agree. The record, viewed most favorably to Bailey, shows that he was placed in the infirmary, monitored closely and received several medications designed to reduce his pain. When the swelling from surgery persisted, Bailey was prescribed Toradol injections to treat the swelling. Although Bailey clearly was not pleased with the refusal to provide him ice and NSAIDs, this refusal does not, without more, amount to an Eighth Amendment violation.

No doubt, Bailey vigorously disagrees with the quality of care he received in the days after his surgery. But mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). Bailey has not demonstrated the kind of extraordinary circumstances from which a factfinder could infer that the medical providers acted with deliberate indifference in denying him ice and NSAIDs. Nothing in the medical record supports that Bailey's complaints went unaddressed or that he was forced to endure pain after surgery without medically appropriate care and medication.[4] Accordingly, Wexford's motion, construed as one for summary judgment, is granted.

---

[4] Although Bailey takes issue with the content of certain medical records, he offers little evidence apart from his general disagreement, which, at times, reflects his confusion about the nature of the testing and treatment he received. ECF No. 25 at 6-7; see, e.g., ECF No. 27 at 3 n.2. His disagreements with the medical records do not implicate his main claim – that he had been denied constitutionally adequate medical care when he did not receive NSAIDs or ice.

A separate Order follows.

| | |
|---|---|
|     11/6/20     |     /S/     |
| Date | Paula Xinis |
| | United States District Judge |